IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ROY O. BALL and <br> NORMAN W. BERNSTEIN, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | |
| VERSAR, INC., | ) <br> ) | |
| Defendant, Counterclaimant, <br> And Third Party Plaintiff, | ) <br> ) <br> ) | CASE NO. IP01-C-0531-H/K |
| v. | ) <br> ) | |
| ENVIRONMENTAL RESOURCES <br> MANAGEMENT, INC. and <br> RADIAN INTERNATIONAL, LLC, | ) <br> ) <br> ) <br> ) | |
| Third Party Defendants. | ) | |

### AFFIDAVIT OF DAVID R. PERRY

I have read and evaluated the Affidavit of Roy O. Ball dated December 7, 2005 and various reports and documents pertaining to the Environmental Conservation and Chemical Corporation (ECC) Site in Zionsville, Indiana "Site." The opinions expressed within this letter are presented within my Expert Report, dated November 4, 2004. Based on my experience as a professional geologist and environmental professional, and after review of the available reports and documents, I have the following opinions, to a reasonable degree of scientific certainty, related to various issues affecting site remediation activities:

- Data from the sampling of the horizontal pilot test well referred as Exhibit 3 in the Affidavit of Roy O. Ball dated December 7, 2005, reconfirms the presence of dense non-aqueous phase liquid (DNAPL) at the ECC site. United States Environmental Protection Agency (EPA) publication 9355.4-16FS titled *DNAPL Site Characterization* states that DNAPL presence can be inferred if the "concentration of DNAPL chemicals in groundwater are greater than 1% of the pure phase solubility." One percent of the pure phase solubility of tetrachloroenthene (PCE) is 1,500 micrograms per liter (ug/l) and one percent of the pure phase solubility of 1,1,1-trichloroethane (1,1,1-TCA) is 13,000 ug/l. PCE was detected in two samples collected from Port #5 of the horizontal pilot test well at concentrations of 5,400 ug/l and 7,000 ug/l. 1,1,1-TCA was detected in two samples collected from Port #5 of the horizontal pilot test well at concentrations of 19,000 ug/l and 42,000 ug/l. The concentrations of PCE and 1,1,1-TCA in the samples collected from the Port #5 location of the horizontal pilot test well significantly exceed the EPA established threshold for determining the presence of DNAPL.

- Based on the horizontal pilot test well sampling port locations presented in Exhibit 2 of the Affidavit of Roy O. Ball dated December 7, 2005, Port #5 is located outside the immediate vicinity of till well T-2 where DNAPL was previously detected. Therefore, it is my professional opinion that the occurrence of DNAPL is not a localized condition at the ECC site. DNAPL provides a highly concentrated ongoing source of subsurface water contamination. Through migration, advection, and dispersion, DNAPL is known to contribute to subsurface water contamination at hydraulically distant locations from where the DNAPL is located.

- It is my professional opinion that the presence of DNAPL at the ECC site continues to be a primary cause of the impacts detected in till water at the ECC site. Furthermore, as

- expressed in my Expert Report dated November 4, 2004, soil contamination below the zone of influence specified in Amendment 2 of the Contract between Versar and the Trustees is demonstrated by the fact that a dense non-aqueous phase liquid (DNAPL) was detected in till well T-2 (the screened interval for this well begins at a depth below the contract required treatment zone).

- As presented in the design documents prepared by Radian on behalf of ECC, ECC selected the soil treatment technology (Soil Vapor Extraction [SVE]) and soil treatment zone (0 to 9 feet below the original ground surface). ECC therefore advocated the application of SVE in the specified area as a way to achieve the cleanup criteria.

- The design documents prepared by Radian on behalf of ECC selected the installation of extraction wells or trenches below 10 feet below ground surface (bgs). Furthermore, based upon my review of the site investigation reports and my experience at sites with similar glacially deposited sediments, there is a vertical hydraulic connection between the till unit and the underlying sand and gravel at the ECC site. The field observation and field monitoring results further support this connection. This vertical hydraulic connection, in essence, creates a source of water recharge to the till unit from the sand and gravel unit below. Given the design restrictions barring the installation of extraction wells or trenches below 10 feet bgs and the presence of a source of water recharge from below the till unit, SVE cannot effectively dewater below a depth of 10 feet bgs at the site. Furthermore, in the absence of a vertical hydraulic connection, Versar's SVE system would have dewatered the till unit and treated site impacts within the system's zone of influence.

- It is my professional opinion that the vertical hydraulic connection between the till unit and the underlying sand and gravel directly contributed to the failure of the selected remediation technology to achieve the till water cleanup criteria.

David R. Perry, P.G.

Sworn to before me this 28th day of December, 2005

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Jennifer A. Crock, Notary Public
Murrysville Boro, Westmoreland County
My Commission Expires Feb. 21, 2009